UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE and JOHN DOE,<br><br>   Plaintiffs,<br><br>vs.<br><br>NEW YORK FERTILITY INSTITUTE; KHALID SULTAN; MAJID FATEH; MICHAEL FEMI OBASAJU; and DOES 1 THROUGH 10, inclusive,<br><br>   Defendants. | Civil Action No.:<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION REQUESTING LEAVE TO PROCEED PSEUDONYMOUSLY** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION REQUESTING LEAVE FOR PLAINTIFFS TO PROCEED PSEUDONYMOUSLY**

  Plaintiffs, proceeding pseudonymously as Jane Doe and John Doe, by and through their attorneys, Peiffer Wolf Carr Kane Conway & Wise, LLP, respectfully submit this Memorandum of Law in support of Plaintiffs' Motion Requesting Leave to file their Complaint and proceed pseudonymously.

  Plaintiffs should be permitted to proceed with pseudonyms under Second Circuit law. This case involves the very private decision to achieve a pregnancy through artificial means. Moreover, when the defendants—a fertility clinic and its employees—transferred a stranger's embryos to Plaintiffs, which resulted in a pregnancy, Plaintiffs made the private decision to have an abortion.

  Plaintiffs have disclosed their identities to Defendants, who thus will be able to defend against the legal claims no differently from any other lawsuit in which plaintiffs proceed with their legal names. However, consistent with Second Circuit law, they simply prefer to keep their identities private from the public in a matter concerning incredibly private and sensitive matters.

  A. **Legal Framework Governing Motions to Proceed Pseudonymously**

  Complaints typically include the legal names of the plaintiffs. However, courts approve

plaintiffs litigating under pseudonyms in certain circumstances. *See, e.g., Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 189 (2d Cir. 2008). When determining whether plaintiffs should be permitted to proceed pseudonymously, courts balance the plaintiff's interest in anonymity against both the public interest in disclosure and any prejudice to the defendant. *Id.* The Second Circuit has provided a non-exhaustive list of ten factors for courts to consider when determining whether to allow plaintiffs to proceed pseudonymously:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (quotations, citations, and edits omitted). The Second Circuit emphasized that "this list is non-exhaustive," that "district courts should take into account other factors relevant to the particular case under consideration," and that the "factor-driven balancing inquiry requires a district court to exercise its discretion in the course of weighing competing interests." *Id.*

    **B.**    **Facts Relevant to Plaintiffs' Motion**

Plaintiffs were customers of Defendants, a fertility clinic and its employees. (Complaint ("Compl."), at ¶¶ 1, 8-13.) More specifically, Plaintiffs utilized the services of the fertility clinic in order to achieve a pregnancy through artificial reproductive technology. (*Id.* at ¶¶ 23-37.) Defendants retrieved Plaintiff Jane Doe's eggs, fertilized the retrieved eggs with Plaintiff John Doe's sperm, and were supposed to transfer the embryos to Ms. Doe's uterus to facilitate a

pregnancy. (*Id.* at ¶ 24, 29-32, 36-37.)

Tragically, Defendants mixed up Plaintiffs' embryo(s) with an embryo of a couple unknown to Plaintiffs. Defendants transferred one of the embryos of unknown origin to Ms. Doe, which resulted in a pregnancy. (*Id.* at ¶¶ 38-40.) When Plaintiffs received blood test results that indicated the embryo was not genetically related to them, Defendants refused to provide full and truthful information to Plaintiff, and instead insisted that the child Jane Doe was carrying must be related to Plaintiffs. (*Id.* at ¶¶ 45-66.)

Plaintiffs finally confirmed through an amniocentesis that the baby Ms. Doe was carrying was not genetically related to either of the Plaintiffs. (*Id.* at ¶¶ 70-71.) Fearing they might lose the child in a legal battle, Plaintiffs attempted to get additional information from Defendants so they could make an informed decision. (*Id.* at ¶¶ 74-77.) Defendants lied and refused to provide such information. (*Id.* at ¶ 77.) Ultimately, due to Defendants' conduct, Ms. Doe had an abortion. (*Id.* at ¶¶ 78-79.)

While Plaintiffs were making these heartbreaking decisions, Defendants either could not locate the embryo(s) that were created from Plaintiffs' eggs and sperm, or refused to disclose their whereabouts to Plaintiffs. (*Id.* at ¶¶ 76-77, 96.) Accordingly, Plaintiffs did not know if those embryos were transferred to another of Defendants' clients, and thus if children who are genetically related to Plaintiffs were alive and being raised by complete strangers. (*Id.*)

    C. **The *Sealed Plaintiff* Factors Support Plaintiffs' Motion to Proceed Pseudonymously**

The following *Sealed Plaintiff* factors militate in favor of granting Plaintiffs' motion to proceed pseudonymously: whether the litigation involves matters that are highly sensitive and of a personal nature; whether identification poses a risk of retaliatory physical or mental harm to the plaintiffs; whether identification presents other harms and the likely severity of those harms;

whether the defendant will be prejudiced by allowing the plaintiffs to press their claims pseudonymously; whether the public's interest in the litigation is furthered by requiring the plaintiffs to disclose their identities; and whether there are any alternative mechanisms for protecting the plaintiffs' confidentiality. *See Sealed Plaintiff*, 537 F.3d at 190.

Of these relevant factors, the most significant is the highly sensitive and personal nature of the allegations. This court has held that claims involving pregnancy or minor children, like the present matter, qualify as "highly sensitive or personal" and permit anonymous plaintiffs to proceed pseudonymously. *Michael v. Bloomberg L.P.,* No. 14-CV-2657 TPG, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015); *see also N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, No. 12 CIV. 6152 VM KNF, 2012 WL 5899331, at *4 (S.D.N.Y. Nov. 26, 2012) (holding "cases warranting the plaintiff in proceeding by using a pseudonym, include matters 'such as birth control [and] abortion'").

Plaintiffs' claims include detailed allegations of fertility treatments. (Compl. ¶¶ 23-42.) They also include Plaintiffs undergoing an abortion due to Defendants wrongfully placing Ms. Doe in the position to become an unwilling surrogate for a stranger's child. (*Id.* ¶¶ 72, 76, 78-80.) Plaintiffs are likely to suffer social stigma as there are still many stigmas associated with the fertility industry in general, and certainly with abortion. These are the quintessential type of claims that are so highly personal in nature, and so intimately tied to the sanctity of the home and family, that shielding Plaintiffs' identities from the general public is most appropriate. *See N. Jersey Media Grp.*, 2012 WL 5899331, at *4.

Permitting the details of these highly personal claims to be publicly associated with them would certainly negatively impact the Plaintiffs' family if their identities were revealed at this stage.  Significantly, courts have generally granted anonymity to protect privacy rights in cases involving abortion. *See, e.g., Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Mundy*, 514 F.2d 1179

(7th Cir. 1975); *see also State v. Jacobus*, 348 N.Y.S.2d 907, 913–14 (Sup. Ct. 1973) (holding "the 'penumbra' of privacy . . . should extend to the protection of the identifying names" of individuals who have had abortions, in part due to the social stigma attached to abortion).

The extremely personal nature of the allegations informs other factors too, including that identification poses a risk of mental harm to plaintiffs and to innocent non-parties (such as their families, including Plaintiffs' children), and whether the identification presents other, severe harms. Because of the highly sensitive nature of the allegations, all three of these factors weigh substantially in favor of permitting Plaintiffs to proceed pseudonymously.

Furthermore, the other factors that are most relevant here – whether the defendant will be prejudiced, whether the public's interest in the litigation is furthered by requiring the plaintiffs to disclose their identities, and whether there are alternative mechanisms for protecting the plaintiffs' confidentiality – do not weigh against granting the motion, especially in light of the sensitive nature of the allegations. Here, the Defendants know the Plaintiffs' identities, which obviates any prejudice that Defendants might otherwise suffer by having to defend against allegations by unknown persons. *See. e.g., EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (holding a defendant failed to identify "any prejudice to its ability to conduct discovery or try the matter" if a motion to proceed pseudonymously were granted, given that the defendant knew the plaintiff's name). The public's interest in accessing judicial proceedings is not meaningfully advanced by revealing the Plaintiffs' identities in that Plaintiffs do not seek to seal the proceedings entirely, but merely to conceal their names. Further, it is submitted that there is not a ready alternative to pseudonyms that will protect Plaintiffs' interest in confidentiality.

### D. Conclusion

For the reasons stated above, Plaintiffs respectfully request that this Court allow them to proceed pseudonymously.

Date: March 25, 2022					Respectfully submitted,

s/ *Jason J. Kane*
Jason J. Kane
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
95 Allens Creek Road, Bldg. 1, Ste. 150
Rochester, NY 14618
Telephone: (585) 310-5140
Facsimile: (504) 608-1465
jkane@peifferwolf.com

Adam B. Wolf (*PHV application forthcoming*)
Tracey B. Cowan (*PHV application forthcoming*)
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA  94111
Telephone: (415) 426-5641
Facsimile: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com
